## Massachusetts Bonding & Insurance Co. v. Steele.

(Decided Nov. 10, 1933.)

W. A. BERRY for appellant.
BEN S. ADAMS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

The appellant, Massachusetts Bonding & Insurance Company, appointed A. R. Steele its agent in Paducah, Ky., in 1919. He represented appellant for seven years, and during that period wrote insurance on which the premiums amounted to $6,932.38. On August 19, 1926, appellant canceled all of its outstanding policies and withdrew from the Paducah territory. Appellant claimed that Steele was indebted to it in the sum of $207.33 for premiums collected by him and not turned over to the company, and brought suit for that amount. Steele filed a pleading styled "Answer, set off and counter claim," in which he denied that he was indebted to appellant in the sum of $207.33, or any other sum, and in his counterclaim sought a judgment against the appellant for $350, representing license taxes paid by him to the city of

Paducah during the seven years he represented the appellant as its agent.

The issues were completed, and, after the proof had been heard, the court instructed the jury to find for Steele on his counterclaim $339.50, and to credit this amount with $20 collected by Steele and not accounted for, unless the jury believed from the evidence the appellant was indebted to Steele at the time in that sum on canceled policies. The jury returned a verdict against the company for $339.50, and it has appealed.

The sole ground relied upon for a reversal of the judgment is that the court erred in peremptorily instructing the jury to find for the defendant and in failing to submit all the issues to the jury. The appellant failed to show that Steele had collected any premiums for which he had not accounted to it, with the possible exception of a $20 item. It is alleged in the petition that Steele had collected premiums on specifically named policies which he had not turned over to the company. Steele proved conclusively that the alleged policies either were never issued, or, if issued and the premiums collected, that he had paid the amount of the premiums to the company, or its authorized agent, and he produced his canceled checks showing that the payments had been made. He admitted that he had collected $20 which he had not paid to the company, but testified that the company was indebted to him in that amount on canceled policies. This question was submitted to the jury.

During the time Steele represented appellant as its agent in Paducah, there was in force a city ordinance which provided that each insurance agent in the city should pay a license fee of $25 annually, and each insurance company doing business in the city should pay an annual license of $50. Steele paid to the city for the appellant the annual license fee of $50 during the seven years he represented it. The only issue made by the pleadings and the proof, aside from the $20 item above referred to, was whether or not appellant had agreed to reimburse Steele for these license fees paid by him.

On October 1, 1919, shortly after the contract of agency was entered into, appellant wrote a letter to Steele in which it was said:

"We again want to call your attention to the fact that there is a City License of Fifty Dollars

($50.00) to be paid in Paducah each year. This amount is equivalent to 5% on $1000 and unless you can do business of at least that amount your agency would not be on a profitable basis. We had an understanding with Mr. Steele formerly in regard to this and while we want to do everything to assist you and we are willing to take a chance on this as we believe you can produce the business, it must be understood that unless you can place the Agency on a basis profitable to the Company as well as to yourselves it could not be enduring.''

On January 27, 1921, the A. R. Steele Insurance Agency sent the receipt for the license fee for the year 1921 to Tippett and Walker at Louisville, Ky., general agents of the Massachusetts Bonding & Insurance Company, and asked them to credit Steele's account with $50. On February 7, 1921, Tippett and Walker advised Steele that they had forwarded the receipt to the home office for its approval, and in their letter said:

"Your city license has been one of concern to the Company ever since we have had an Agency in Paducah, prior to your representing same, as well as up to this time, for unless the premium exceeds $1000.00 the Company is losing, and they have written to ascertain if it is not possible to have some clear understanding in this matter, and we desire to know if you will agree to positively guarantee this much business during this year.

"We find from our records that your business for the year 1920 amounted to $946.94, which is not quite the minimum.''

On February 14, 1921, they wrote to Steele as follows:

"We reported to the Home Office that your Agency had written $946.94 in premiums for the year 1920, and they have agreed to allow the credit of $50.00 for City License that you forwarded to us the first of the month.''

On March 25, 1922, Tippett and Walker wrote to Steele as follows:

"We are in receipt of a letter from the Home Office calling our attention to the fact that they cannot stand for the charge of $50.00 as your business has not justified the deduction from your account.

current, as they only agree to reimburse you to the amount of 5% of the business done during the year.''

This correspondence clearly discloses that the company agreed to reimburse Steele for the license fees paid by him for the years 1920 and 1921, and at least thereafter to reimburse him to the extent of 5 per cent. of the premiums on the business done during the year. The amount of premiums collected in 1922, 1923, and 1926 exceeded $1,000 each year, and in the remaining four years of the period during which Steele represented appellant as its agent the amount of premiums collected each year was less than $1,000 and amounted in the aggregate for the four years to $3,790.37.

The trial court, in giving the peremptory instruction for appellee on his counterclaim, treated the contract between the parties as an agreement by the company to reimburse Steele for license fees paid by him to the extent of 5 per cent. on not to exceed $1,000 of premiums collected in any year. The premiums thus considered amounted to $6,790, and 5 per cent. of this amount is $339.50, the amount which the court instructed the jury to find for Steele on his counterclaim.

The evidence shows conclusively that appellant agreed to reimburse Steele at least to that extent, and the court did not err in giving the instruction of which complaint is made.

The judgment is affirmed.